**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | |
|---|---|
| In re: | ) Chapter 11 |
| CFO MANAGEMENT HOLDINGS, LLC, *et al.*, | ) Case No. 19-40426 |
| Debtors.[1] | ) Joint Administration Requested |

**DEBTORS' MOTION PURSUANT TO 11 U.S.C. SECTIONS 105(A) AND 363
TO (I) EMPLOY AND RETAIN SIERRACONSTELLATION PARTNERS, LLC
AND (II) DESIGNATE LAWRENCE R. PERKINS AS CHIEF RESTRUCTURING
OFFICER, EFFECTIVE AS OF THE PETITION DATE**

**YOUR RIGHTS MAY BE AFFECTED BY THE RELIEF SOUGHT IN THIS PLEADING. YOU SHOULD READ THIS PLEADING CAREFULLY AND DISCUSS IT WITH YOUR ATTORNEY, IF YOU HAVE ONE IN THIS BANKRUPTCY CASE. IF YOU OPPOSE THE RELIEF SOUGHT BY THIS PLEADING, YOU MUST FILE A WRITTEN OBJECTION EXPLAINING THE FACTUAL AND/OR LEGAL BASIS FOR OPPOSING THE RELIEF.**

**NO HEARING WILL BE CONDUCTED ON THIS APPLICATION UNLESS A WRITTEN OBJECTION IS FILED WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT AND SERVED UPON THE PARTY FILING THIS PLEADING *WITHIN FOURTEEN (14) DAYS FROM THE DATE OF SERVICE* SHOWN IN THE CERTIFICATE OF SERVICE UNLESS THE COURT SHORTENS OR EXTENDS THE TIME FOR FILING SUCH OBJECTION. IF NO OBJECTION IS TIMELY SERVED AND FILED, THIS PLEADING SHALL BE DEEMED TO BE UNOPPOSED, AND THE COURT MAY ENTER AN ORDER GRANTING THE RELIEF SOUGHT. IF AN OBJECTION IS FILED AND SERVED IN A TIMELY MANNER, THE COURT WILL THEREAFTER SET A HEARING WITH APPROPRIATE NOTICE. IF YOU FAIL TO APPEAR**

---

[1] Carter Family Office, LLC, 5899 Preston Road, Ste. 203, Frisco, TX 75034, EIN# XX-XXX1652 Case No. 19-40432; CFO Management Holdings, LLC, 5899 Preston Road, Ste. 203, Frisco, TX 75034, EIN# XX-XXX6987, Case No. 19-40426; Christian Custom Homes, LLC, 5899 Preston Road, Ste. 203, Frisco, TX 75034, EIN# XX-XXX4648, Case No. 19-40431; Double Droptine Ranch, LLC, 5899 Preston Road, Ste. 203, Frisco, TX 75034, EIN# XX-XXX7134, Case No. 19-40429; Frisco Wade Crossing Development Partners, LLC, 5899 Preston Road, Ste. 203, Frisco, TX 75034, EIN# XX-XXX4000, Case No. 19-40427; Kingswood Development Partners, LLC, 5899 Preston Road, Ste. 203, Frisco, TX 75034, EIN# XX-XXX1929, Case No. 19-40434; McKinney Executive Suites at Crescent Parc Development Partners, LLC, 5899 Preston Road, Ste. 203, Frisco, TX 75034, EIN# XX XXX2042, Case No. 19-40428; North-Forty Development LLC, 5899 Preston Road, Ste. 203, Frisco, TX 75034, EIN# XX-XXX5532, Case No. 19-40430; and West Main Station Development, LLC, 5899 Preston Road, Ste. 203, Frisco, TX 75034, EIN# XX-XXX7210, Case No. 19-40433.

**AT THE HEARING, YOUR OBJECTION MAY BE STRICKEN. THE COURT RESERVES THE RIGHT TO SET A HEARING ON ANY MATTER.**

**TO THE HONORABLE BRENDA T. RHOADES, UNITED STATES BANKRUPTCY JUDGE:**

By this Motion (this "Motion"), CFO Management Holdings, LLC ("CFO"), Carter Family Office, LLC, Christian Custom Homes, LLC, Double Droptine Ranch, LLC, Frisco Wade Crossing Partners, LLC, Kingswood Development Partners, LLC, McKinney Executive Suites at Crescent Parc Development Partners, LLC, North-Forty Development LLC, and West Main Station Development, LLC, (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), as debtors and debtors in possession, hereby seek the entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), (i) authorizing and approving the retention of SierraConstellation Partners, LLC ("Sierra"); and (ii) designating Lawrence R. Perkins ("Mr. Perkins") as chief restructuring officer ("CRO") of CFO and the Debtors. In further support of this Motion, Debtors respectfully represent as follows:

**JURISDICTION**

1. The United States Bankruptcy Court for the Eastern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

2. This is a core proceeding pursuant to 28 U.S.C. § 157(b), and the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

3. The statutory predicates for the relief requested herein are sections 105 and 363 of title 11 of the United States Code (the "Bankruptcy Code"), and rules 2014(a), 2016, and 6003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## RELIEF REQUESTED

4. Pursuant to sections 105(a) and 363 of the Bankruptcy Code and Rules 2014(a), 2016, and 6003 of the Bankruptcy Rules, Debtors seek entry of an Order, substantially in the form of the Proposed Order, authorizing (i) the employment and retention of Sierra on the terms and conditions set forth in Sierra's pre-petition engagement letter with CFO entered into with the written consent of each of the members of CFO as of January 17, 2019 (the "Engagement Letter"), a copy of which is attached hereto as **Exhibit C** and incorporated by reference; (ii) the designation of Mr. Perkins as CRO pursuant to the Engagement Letter; and (iii) such other and further relief as the Court deems just, proper, and necessary.

## BACKGROUND

5. On February 17, 2019 (the "Petition Date"), each of the Debtors commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or statutory committee of creditors has been appointed in these Chapter 11 Cases.

6. CFO Management Holdings, LLC ("CFO") was created on or about January 18, 2019, to hold and manage the underlying assets in each of the following Debtors: Double Droptine Ranch LLC, North-Forty Development LLC, Christian Custom Homes, LLC, Carter Family Office, LLC, Kingswood Development Partners, LLC, West Main Station Development, LLC, Frisco Wade Crossing Development Partners, LLC, and McKinney Executive Suites at Crescent Parc Development Partners, LLC (collectively, the "Subsidiary Debtors"). The

3

Subsidiary Debtors engage in developing and selling residential and commercial real estate in Collin County, Texas, and own and manage a wild game ranch in Southern Oklahoma.

7.  Prior to the creation of CFO, all of the Subsidiary Debtors were wholly-owned and controlled by Phillip Carter ("Carter") and/or entities he controlled, managed and/or owned. On or about January 18, 2019, Carter contractually agreed to relinquish control and management over the Subsidiary Debtors through a corporate restructuring, and was removed from all duties of the Subsidiary Debtors.  As part of the corporate restructuring, all real estate assets (nine of which Sierra is aware of) owned by the Subsidiary Debtors are now controlled by CFO (a newly formed holding company).  Carter continues to maintain an equity interest in CFO.

8.  On January 25, 2019, the United States Securities and Exchange Commission (the "SEC") filed a Complaint (the "SEC Complaint") in the Northern District of Texas (Case No. 3:19-cv-00206-K) against Carter (the "SEC Suit").  The SEC Suit was transferred to the Eastern District of Texas (Case No. 4:19-cv-00100).  The SEC and the Texas State Securities Board (the "TSSB") allege that Carter and two other individuals, Bobby Guess and Richard Tilford (collectively, the "Defendants"), violated various state and federal securities law.  The SEC Complaint alleges that the Defendants raised approximately $45 million from more than 270 noteholders across the United States (the "Noteholders").  The SEC Complaint alleges that the Defendants raised money obtained from the Noteholders by selling "short-term, high-yield promissory notes issued by a number of shell companies intentionally named to confuse investors."  SEC Complaint ¶ 2.  The SEC Complaint further alleges that the Defendants purported to offer to the Noteholders investments in legitimate real estate development companies controlled by Carter, which the Defendants represented as being backed by hard assets (real estate projects that are assets of the Subsidiary Debtors).  SEC Complaint ¶ 2.

According to the SEC Complaint, the "notes" issued were in fact backed by unrelated, but closely-named, entities that had no assets. The SEC Complaint alleges that Carter misappropriated the Noteholder's funds, which he used to: finance expenses (including $1.2 million towards a personal IRS tax lien), operate a luxury hunting ranch in Oklahoma, fund his lifestyle, and pay certain Noteholders in furtherance of an alleged fraudulent scheme.

9. Upon information and belief, the Subsidiary Debtors were the ultimate recipients of funds allegedly fraudulently procured from the Noteholders, of which some funds were invested in the Subsidiary Debtors' construction projects. Upon information and belief, the Noteholders believed they were specifically investing in some or all of the Subsidiary Debtors' real property where construction was on-going. The Debtors' records are in a complete state of disarray, and it appears Noteholders' funds may have been commingled by the Subsidiary Debtors or used for non-construction purposes. Nevertheless, the Debtors believe the Noteholders will assert claims against the Debtors collectively, without regard for their legal separateness.

10. The Debtors have not requested to employ another professional in the capacity for which the Debtors seek to employ Sierra and Mr. Perkins.

**RETENTION OF SIERRA**

**A.    Sierra's Qualifications**

11. Sierra is an interim management and advisory firm providing services to companies navigating their way through business challenges, including bankruptcy. Sierra's diversified consulting experience assisting companies in transition has made it capable of solving strategic, operational, and financial issues faced by businesses. Specifically, Sierra provides services in areas including performance improvement, financial restructuring, and interim management.

5

12. Sierra has advised management and boards of directors in several significant restructurings and turnarounds in recent years. *See, e.g., In re J&M Sales, Inc.* No. 11801 (LSS) Bankr. D. Del. Nov. 2018); *In re Katy Indus., Inc.*, No. 17-11101 (KJC) (Bankr. D. Del. June 16, 2017) (Dkt. No. 154); *In re Liberty Asset Mgmt. Corp.*, No. 16-13575 (Bankr. C.D. Cal. Jun. 9, 2016) (Dkt. No. 94); *In re Bethel Healthcare, Inc. & Corinthian Sub-Acute & Rehab. Ctr., Inc.*, No. 13-12220 (Bankr. C.D. Cal. Jun. 11, 2013); *In re Cranberry Growers Coop.*, No. 17-13318 (Bankr. W.D. Wis. Sept. 25, 2017); *In re Naartjie Custom Kids, Inc.*, No. 14-29666 (Bankr. D. Utah Sept. 12, 2014). Sierra has a wealth of experience in providing restructuring, financial, and crisis management services in restructurings and reorganizations and enjoys an excellent reputation for services it has rendered in large and complex chapter 11 cases on behalf of debtors and creditors throughout the United States.

13. As set forth in the Engagement Letter, CFO retained Mr. Perkins, the founder and Chief Executive Officer of Sierra, as Engagement Principal (as defined in the Engagement Letter) to become the CRO of CFO and to maintain overall responsibility for the engagement on behalf of Sierra. Mr. Perkins has over 19 years of management consulting and advisory experience in restructuring matters. Specifically, Mr. Perkins has extensive experience representing debtors in bankruptcy and out-of-court restructurings, providing due diligence on behalf of parties-in-interest, implementing operational changes, managing businesses, negotiating new and existing financing agreements, and performing estate wind-down and trustee-related services. In connection with his in-court and out-of-court restructurings, Mr. Perkins has held positions such as Chief Restructuring Officer, Deputy Chief Restructuring Officer, Principal Investor, Turnaround Advisor, Strategic Consultant, Investment Banker, Financial Executive, Crisis Manager, Interim Chief Executive Officer, and Interim Chief

Financial Officer to numerous middle-market companies, and is particularly skilled at assisting companies by providing crisis management services.

14.     Prior to founding Sierra in January 2013, Mr. Perkins was a Senior Managing Director and Regional Director of a national turnaround consulting firm where he was responsible for business development, marketing, staffing, and general management of the firm's presence in the region west of the Mississippi River.  Throughout his career, Mr. Perkins has been appointed to serve as chief restructuring officer in various chapter 11 cases, including, but not limited to, the following: *In re Woodbridge Group*, No. 17-12560 (Bankr. D. Del. Dec. 4, 2017 (KJC); *In re Katy Indus., Inc.*, No. 17-11101 (KJC) (Bankr. D. Del. June 16, 2017) (Dkt. No. 154); *In re Liberty Asset Mgmt. Corp.*, No. 16-13575 (Bankr. C.D. Cal. Jun. 9, 2016) (Dkt. No. 94); *In re Bethel Healthcare, Inc. & Corinthian Sub-Acute & Rehab. Ctr., Inc.*, No. 13-12220 (Bankr. C.D. Cal. Jun. 11, 2013) (Dkt. No. 112); and *In re The Fuller Brush Co., Inc.*, No. 12-10714 (Bankr. S.D.N.Y. Mar. 9, 2012) (Dkt. No. 40).

15.     Pursuant to the Engagement Letter, Mr. Perkins will provide CRO services to CFO and, in turn, in his role as CRO of CFO, to each of the Debtors managed by CFO.

16.     Sierra's relationship with Debtors began in December 2018, when Sierra was introduced to the Debtors by Sherman Financial Group.  At that time, Sherman Financial Group was exploring the possibility of becoming a lender to the Debtors.  To the best of Sierra's knowledge, Sherman Financial Group and its principals are not related to the Debtors or any of their principals or members.  By virtue of the introduction by Sherman Financial Group to the Debtors, on or about January 2, 2019, Sierra was retained by Beard Harris, LLP, then corporate counsel to the Debtors, to assist Beard Harris with the rendering of legal advice and guidance to the Debtors.  As of the Petition Date, Sherman Financial Group is not a lender to the Debtors.

17. In addition to receiving pre-petition legal guidance from Beard Harris, the Debtors were also advised by Winstead PC – now proposed bankruptcy and corporate counsel to the Debtors.

18. On or about January 17, 2019, the members of CFO, by unanimous written consent, retained Sierra and Mr. Perkins pursuant to the Engagement Letter. Simultaneous with CFO's approval of and entry into the Engagement Letter, Sierra terminated its engagement with Beard Harris. Sierra and Mr. Perkins have been managing the business affairs and operations of CFO and the other Debtors since January 18, 2019; including, but not limited to, the oversight of the preparation for this chapter 11 proceeding.

19. As a result of the foregoing, Mr. Perkins and the Sierra employees have become familiar with Debtors' corporate and capital structure, operations and other aspects of their business, and the challenges facing the Debtors. Accordingly, Debtors have concluded, with the guidance of their counsel, that Sierra and Mr. Perkins are uniquely and ideally suited to provide quality and efficient post-petition services to Debtors.

**B.    Services To Be Provided**

20. Subject to the entry of the Proposed Order and consistent with the terms of the Engagement Letter, Sierra and Mr. Perkins will provide such services as they and Debtors deem appropriate, including, but not limited to, serving as CRO, providing support to the CRO, signing any documents to be filed with the Court, and performing other duties on behalf of Debtors in these Chapter 11 Cases. Specifically, Sierra will provide services, including, but not limited to, the following:

    a.    Preparing debtor-in-possession cash flow forecasts and financing requirements;

    b.    Assisting and supporting Debtors in identifying, negotiating, and closing debtor-in-possession financing and/or exit financing;

  c. Assisting and supporting Debtors in identifying, negotiation, and closing an asset sale, including a Transaction (as defined in the Engagement Letter);

  d. Preparing schedules and statements for Debtors' bankruptcy filing;

  e. Providing assistance in the management of schedules and reporting for filing in a court-supervised proceeding;

  f. Providing testimony and serving as the responsible party for reporting requirements;

  g. Providing interim management support related to Debtors' operations and cash flow management during the bankruptcy process;

  h. Providing management support in evaluating and responding to parties during negotiation, including landlords, vendors, potential buyers, and other key constituents;

  i. Providing analysis and services related to lease assumptions, rejections, modifications, or terminations;

  j. Interacting with investors, vendors and creditors, including any official committee appointed in these cases, if any, and assisting in the preparation of management reports and Monthly Staffing Reports (as defined herein); and

  k. Assisting in the drafting and confirming of a plan of reorganization, if necessary.

21. Sierra and Mr. Perkins will use reasonable efforts to coordinate with Debtors' other retained professionals to avoid the unnecessary duplication of services.

**C. Professional Compensation**

22. Debtors and Sierra have agreed to discount their hourly fees set forth in the Engagement Letter by approximately 10% (on occasion such hourly rate to be rounded). As a result, Mr. Perkins will charge $575 per hour, Mr. John Farrace, a Senior Managing Director of Sierra, will charge $540 per hour, Mr. Robert Shenfeld, a Director of Sierra, will charge $425 per hour, Mr. Miles Staglik, a Director of Sierra, will charge $400 per hour, and Mr. Josh Caldwell, a Senior Associate, will charge $247.50 per hour. Similar reductions in the hourly rates of Senior

Managing Directors, Managing Directors, Directors, Senior Associates and Associates will be made as well.

23. The reduction in hourly fees reflects Sierra's understanding of the need to work collaboratively with the creditor and noteholder constituents to ensure that recoveries are maximized in these cases. The billing rates reflect, among other things, geographical differentials, differences in experience levels within classifications, and differences between types of services. Sierra's hourly rates are adjusted periodically and may be increased by Sierra in accordance with its normal billing practices on notice to the Court and all constituencies.

24. Debtors and Sierra have also agreed that Sierra will be compensated for reasonable expenses incurred on Debtors' behalf, including, but not limited to, reasonable and customary out-of-pocket expenses that are billed directly to the engagement, such as business class airfare, hotel, car rental, photocopying charges, telephone charges, postage, and shipping.

25. As obligated under the Engagement Letter, on or about February 13, 2019, Debtors provided Sierra with a retainer in the amount of $25,000.00 (the "Retainer").

26. Prior to the Petition Date, Sierra was paid $82,703.75 in fees and reimbursed expenses of $5,456.77 in connection with its engagement by Beard Harris

27. Prior to the Petition Date, the Debtors paid Sierra the full amount of all outstanding invoices for fees and expenses in the amount of $251,505.89 without applying any of the Retainer to such invoice, and, as a result, Sierra is not a creditor of the Debtors. Upon information and belief, all fees and expenses incurred by Sierra prior to the Petition Date have been paid, and if not paid, are waived.

28.   Commencing on the Petition Date, with the Court's authority and in accordance with the Proposed Order, Sierra will continue to hold the Retainer in a trust account and apply the same only upon further order of this Court.

29.   Notwithstanding provisions of the Engagement Letter, Sierra will not be paid any Transaction Fee or New Capital Fee, as defined by and described by the Engagement Letter and Sierra shall not seek any success fee absent application to and an order of this Court.

30.   The hourly fees described herein, and as set forth in detail in the Engagement Letter, are comparable to compensation generally charged by restructuring advisory firms of similar stature as Sierra for similar engagements, both in and out of court, and are straightforward and economical.

31.   Notwithstanding any provisions of the Engagement Letter to the contrary:

   a.   Sierra and its affiliates shall not act as a financial advisor, claims agent/claims administrator, or investor/acquirer in connection with the above-captioned cases;

   b.   In the event Debtors seek to have Sierra personnel assume executive officer positions that are different than the positions disclosed in this Motion, or to materially change the terms of the engagement by either (i) modifying the functions of personnel, (ii) adding new personnel, or (iii) altering or expanding the scope of the engagement, a motion to modify the retention shall be filed;

   c.   Sierra shall file monthly with the Court, with copies to the U.S. Trustee and all official committees, a report of staffing on the engagement for the previous month (the "Monthly Staffing Report"). Such Monthly Staffing Report shall include the names and functions filled of the individuals assigned. All staffing, fees, or expenses paid by the Debtors to Sierra shall be subject to review by the Court in the event a written objection is filed in the Cases, as further described below;

   d.   With respect to the Monthly Staffing Reports, Sierra shall file with the Court, and provide notice to the U.S. Trustee and all official committees, reports of compensation earned and expenses incurred on a monthly basis. Such Reports shall contain summary charts which describe the services provided, identify the compensation earned by each executive officer and staff employee provided, and itemize the expenses incurred. Time records

        shall (i) be appended to the reports, (ii) contain detailed time entries describing the task(s) performed, and (iii) be organized by project category. Where personnel are providing services at an hourly rate, the time entries shall identify the time spent completing each task in 1/10/hour increments and the corresponding charge (time multiplied by hourly rate) for each task; where personnel are providing services at a "flat" rate, the time entries shall be kept in hourly increments. All compensation shall be subject to review by the Court in the event an objection is filed, as further described below;

    e.    Any success fees shall be approved by the Court on a reasonableness standard and are not being pre-approved by granting this Motion;

    f.    Debtors are permitted to indemnify those persons serving as executive officers and temporary employees on the same terms as provided to Debtors' other officers and directors under the corporate bylaws and applicable state law, along with insurance coverage under Debtors' existing applicable policies;

    g.    For a period of three years after the conclusion of the engagement, neither Sierra nor any of its affiliates shall make any investments in Debtors; and

    h.    Sierra shall disclose any and all facts that may have a bearing on whether the firm, its affiliates, and/or any individuals working on the engagement hold or represent any interest adverse to Debtors, their creditors, or other parties-in-interest. The obligation to disclose identified in this subparagraph is a continuing obligation.

**D.    Monthly Staffing Reports**

    32.    Because Sierra is not being employed as a professional under section 327 of the Bankruptcy Code, it should not be required to submit fee applications under sections 330 and 331 of the Bankruptcy Code. Instead, Debtors request that the fees and expenses incurred by Sierra in completion of its services under the Engagement Letter be treated as administrative expenses of Debtors' estates and paid by Debtors in the ordinary course of business upon submission by Sierra of an invoice. Sierra shall file with the Court, and provide copies to the U. S. Trustee and counsel to the Official Committee of Unsecured Creditors, if one is appointed (the "<u>Committee</u>"), a Monthly Staffing Report for the previous month. Such Report shall include the names and functions of the individuals assigned, as well as general time entries describing

the task performed in a manner consistent with Sierra's general practice. Parties-in-interest shall have fourteen (14) days after the date each Monthly Staffing Report is filed with the Court to formally object to such Report. All compensation previously paid and Monthly Staffing Reports will be subject to review and approval by the Court if an objection is filed.

**E.     Indemnification**

33.     The Proposed Order modifies any indemnification provisions set forth in the Sierra Engagement Letter so that Debtors are only permitted to indemnify those persons serving as executive officers on the same terms as provided for in Debtors' pre-petition D&O policy and pursuant to Debtors' corporate governance documents, including, but not limited to, all applicable limited liability company agreements and applicable state law. Debtors and Sierra believe that the indemnification provisions, as modified by the Proposed Order, are customary and reasonable for firms providing interim management services.

**F.     Lack Of Adverse Interest In Debtors**

34.     Annexed hereto as **Exhibit B** is the Declaration of Lawrence R. Perkins in Support of Debtors' Motion to (i) Employ and Retain SierraConstellation Partners, LLC and (ii) Designate Mr. Perkins as Chief Restructuring Officer, effective as of the Petition Date, dated February 20, 2019 (the "Perkins Declaration"), which sets forth Sierra's connections with parties-in-interest in these cases.

35.     To the best of Sierra's knowledge, information and belief, and except to the extent disclosed in this Motion and/or the Perkins Declaration, neither Sierra nor any employee of Sierra (i) holds or represents an interest adverse to Debtors' estate; or (ii) has any connection to Debtors, their creditors, or other parties-in-interest in these Chapter 11 Cases. Based upon their review of the Perkins Declaration, Debtors believe that Sierra is eligible for retention in these cases.

36. To the extent that Sierra discovers any new relevant facts or relationships bearing on the matters described herein during the period of Sierra's retention, Sierra will use reasonable efforts to file promptly a supplemental declaration.

## BASIS FOR RELIEF REQUESTED

37. Section 363(b) of the Bankruptcy Code provides, in part, that a debtor-in-possession "after notice and hearing, may use, sell or lease, other than in the ordinary course of business, property of the estates." 11 U.S.C. § 363(b). Under applicable case law in this and other circuits, in determining whether to authorize a debtor's proposed use of their assets pursuant to section 363(b) of the Bankruptcy Code, courts require debtor to articulate a "business justification for using, selling, or leasing the property outside the ordinary course of business." *ASARCO, Inc. v. Elliott Mgmt. (In re Asarco, L.L.C.)*, 650 F.3d 593, 601 (5th Cir. 2011) (quoting *In re Cont'l Air Lines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986)); *see also Cadle Co. v. Mims (In re Moore)*, 608 F.3d 253, 263 (5th Cir. 2010).

38. The retention of corporate officers is proper under section 363 of the Bankruptcy Code as an appropriate exercise of a debtor's business judgment. Indeed, numerous courts in this district have approved the retention of professionals to perform management services under section 363 of the Bankruptcy Code. *See, e.g., In re ADPT DFW, Holdings LLC,* (17-31432-SGJ11) (Bankr. N.D. Tex. May 19, 2017); *In re CHC Group, Ltd.*, (16-31854-BJH11) (Bankr. N.D. Tex. June 8, 2016); *In re Homer City Generation, L.P.*, Case No. 17-10086 (MFW) (Bankr. D. Del. Jan. 31, 2017); *In re Constellation Enterprises LLC*, Case No. 16-11212 (CSS) (Bankr. D. Del. June 24, 2016) (same).

39. Additionally, the Court's general equitable powers codified in section 105(a) of the Bankruptcy Code provide ample authority for the relief requested in the Motion, as it empowers the Court to "issue any order, process, or judgment that is necessary to carry out the

14

provisions of this title." *See* 11 U.S.C. § 105(a); *see also Louisiana PSC v. Mabey (In re Cajun Elec. Power Coop., Inc)* 185 F.3d 446, 452 n.9 (5th Cir. 1999) ("Section 105(a) gives bankruptcy courts the equitable power to issue any order that is necessary or appropriate to carry out the provisions of the Bankruptcy Code, and it is in this section that bankruptcy courts find their general equitable power") (internal citation and quotation omitted).

40. Debtors submit that the employment of Sierra, including Mr. Perkins, under the terms of the Sierra Engagement Letter, as modified by the Proposed Order, would greatly benefit Debtors' estates and creditors. Sierra is already familiar with Debtors' operations and goals and is well qualified to serve in this role during these Chapter 11 Cases.

41. Additionally, because Debtors are seeking to retain Sierra pursuant to section 363, rather than section 327, of the Bankruptcy Code, Sierra should not be subject to the compensation requirements of sections 330 and 331 of the Bankruptcy Code. Therefore, Debtors request that the fees and expenses of Sierra incurred in the performance of the above-described services be treated as an administrative expense of Debtors' estates and be paid by Debtors in the ordinary course of business, without the need for Sierra to file fee applications or otherwise seek Court approval for the compensation of its services and reimbursement of its expenses, other than the filing of the Monthly Staffing Reports as described above.

42. Debtors further request that Sierra's retention and the employment of Mr. Perkins be made effective as of the Petition Date, in order to allow Sierra to be compensated for the work performed at the commencement of these Chapter 11 Cases, but prior to the Court's consideration of this Motion. Debtors submit that under the circumstances, and to avoid irreparable harm to Debtors' estates that may occur if Mr. Perkins is not immediately retained, retroactive approval to the Petition Date is necessary and warranted. *See, e.g., F/S Airlease II,*

*Inc. v. Simon (In re F/S Airlease II, Inc.)*, 844 F.2d 99, 103 (3d. Cir. 1988), cert. denied, 488 U.S. 852 (1988); *Indian River Homes, Inc. v. Sussex Trust Co.*, 108 B.R. 46, 51 (D. Del. 1989) (approval of debtor's employment of attorney and real estate agent as of a prior date was not an abuse of discretion).

## NO PRIOR REQUEST

43.    No previous application for the relief requested herein has been made by Debtors to this or any other court.

**WHEREFORE**, Debtors respectfully request entry of an order, substantially in the form of the Proposed Order attached hereto as **Exhibit A**, authorizing Debtors to employ and retain Sierra, and designate Mr. Perkins to serve as CRO of CFO and manager of the Debtors, on the terms set forth in the Engagement Letter, as amended by the Proposed Order effective as of the Petition Date, and granting such other and further relief as is just and proper.

Dated: February 20, 2019

CFO Management Holdings, LLC
(for itself and on behalf of its managed affiliate Debtors as debtors and debtors in possession)

By: *Lawrence R. Perkins*_____
Name: Lawrence R. Perkins
Title: Chief Restructuring Officer

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on February 20, 2019, the foregoing document will be served by KCC, the Debtors' proposed noticing agent, via first class U.S. Mail to the parties listed on the attached service list, which includes all creditors and parties-in-interest in all of the Debtors' bankruptcy cases. Additionally, notice of this document was electronically mailed on February 20, 2019, to the parties registered or otherwise entitled to receive electronic notices in this case pursuant to the Electronic Filing Procedures in this District.

*/s/ Annmarie Chiarello*_____
One of Counsel